UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARWIN MOORE, : | Hon. Joseph H. Rodriguez |
| Plaintiff, : | |
| : | Civil Action No. 11-2460 |
| v. : | |
| : | |
| U.S. FOODSERVICE, INC., : | |
| : | OPINION |
| Defendant. : | |

This matter is before the Court is cross-motions for summary judgment filed by Defendant U.S. Foodservice, Inc. [51] and Plaintiff Darwin Moore [72]. Plaintiff was hired by Defendant in June of 2008, but his employment was terminated on or about April 15, 2011 for excessive absenteeism. The Amended Complaint in this matter claimed violations of the Family Medical Leave Act ("FMLA") 29 U.S.C. § 2601 in the form of interference and retaliation, (Count One), and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1, in the form of racial discrimination, (Count Two). The Court has considered the written submissions of the parties and heard oral argument on the motions September 10, 2013. During oral argument, Plaintiff's attorney indicated that Plaintiff is no longer pursuing a claim of racial discrimination.[1] For the reasons set forth here, and those placed on the record during oral argument, Defendant's motion for summary judgment will be granted and Plaintiff's cross-motion will be denied.

---

[1] Additionally, in briefing the motions now before the Court, Plaintiff withdrew any claim of hostile work environment.

## I. Background

Plaintiff began working for Defendant as a Night Warehouse Selector at Defendant's Bridgeport, New Jersey warehouse in June 2008. (Pl. Dep. 35:5-18.) In 2009, Plaintiff first applied for, and was granted, a request for family and medical leave pursuant to the FMLA through Nationwide Better Healthcare ("NBH"), Defendant's FMLA administrator which used a database, Time Off Planning Service, commonly referred to as "TOPS." (Pl. Dep. 58:3-17; Northrup Dep. 9:4-19.) At that time, Plaintiff was approved for intermittent FMLA leave: for one year, Plaintiff was approved to take his FMLA leave allotment on an intermittent basis (five days per month) to care for a family member. (Pl. Dep. 61:2-62:8; Noon Decl., Ex. I.)

In June 2010, Plaintiff again requested intermittent FMLA leave to care for a family member. During the twelve-month period prior to the requested leave, Plaintiff had only worked a total of 1,048.63 hours.[2] (Noonan Decl. ¶ 10.) Nevertheless, Plaintiff was approved to take his remaining FMLA leave on an intermittent basis (two days per week) from June 9, 2010 through December 8, 2010. (Pl. Dep. 66:13-18; Noonan Decl., Ex. J.) He took FMLA-qualifying leave on September 1, 2, 8, 20 and October 13, 2010. (Lebb Decl. ¶ 10; Noonan Decl., Ex. H.)

While he was employed by Defendant, Plaintiff was subject to Defendant's attendance disciplinary policy. Under the policy, an employee's unexcused absences would result in progressive disciplinary action. (Lebb Decl. ¶ 8; Ex. A.) Pursuant to the

---

[2]In order to be eligible for FMLA benefits, an employee must have – in addition to other requirements – worked 1,250 hours in the preceding twelve months. 29 U.S.C. § 2611(2)(A)(ii).

policy, five unexcused absences would result in termination of employment. (Id.) Plaintiff incurred an unexcused absence on September 9, 2010.[3]

In December 2010, Plaintiff applied for and was recertified to take continued intermittent leave to care for a family member. From December 9, 2009 through December 9, 2010, Plaintiff only worked a total of 895.48 hours. (Noonan Decl. ¶ 10.) Nevertheless, for the period of December 9, 2010 through June 8, 2011, Plaintiff was approved to take his remaining allotment of FMLA leave to care for a family member on an intermittent basis (approximately eight days per month). (Pl. Dep. 64:7-10, 20-24; Noonan Decl., Ex. K.) He did so on November 1, 2, 7, 14, 15, and 28, 2010. (Brenner Decl., Ex. J-P; Noonan Decl., Ex. G.)

On February 21, 2011, Plaintiff took workers' compensation leave for an injury he suffered on the job on February 18. (Pl. Dep. 68:19-25.) Pursuant to Defendant's policy and FMLA regulations, Defendant concurrently designated this leave as FMLA leave. See 29 C.F.R. § 825.702(d)(2) ("An employee may be on a workers' compensation absence due to an on-the-job injury or illness which also qualifies as a serious health condition under FMLA. The workers' compensation absence and FMLA leave may run concurrently (subject to proper notice and designation by the employer).") NBH/TOPS notified Plaintiff in writing in a letter dated February 26, 2011 that his workers' compensation absences on February 21 and 22 had been counted towards his twelve-

---

[3] At the time, the absence was deemed his fourth unexcused absence, warranting a three day working suspension. However, when the three prior unexcused absences were later deemed to be FMLA leave, which is excused, the September 9 absence became his first unexcused absence, converting the three day working suspension to a first written warning.

week allotment of FMLA leave.  (Brenner Decl., Ex. P; Noonan Decl., Ex. E; see also Pl. Dep. 67:2-68:1; 80:23-81-2; 134:22-135:4.)

Defendant asserts that these FMLA absences exhausted Plaintiff's hours of FMLA leave.  Accordingly, NBH/TOPS sent Plaintiff a letter dated February 25, 2011, informing him that his requested FMLA leave beginning on February 23 did not qualify for FMLA leave because he had "exhausted [his] FMLA entitlement of 12 weeks in a 12-month period."  (Noonan Decl., Ex. L.)  The letter notified him that "[s]ince this leave does not qualify as FMLA, your absence may be subject to actions referenced in your Division's attendance policy."  (Id.)

During a telephone call initiated by Plaintiff on February 28, 2011, an NBH/TOPS representative explained that "there's no FMLA time remaining," Plaintiff's FMLA leave "just exhausted on February 23."  (Pl. Dep. 244:3-10; Northrup Dep. 116:14-20.)  When Plaintiff questioned the information provided, the NBH/TOPS representative told him that his workers' compensation absences on February 21 and 22 had been counted as FMLA leave because "[i]f you're off work and it's due to an injury, then that is considered . . . a serious condition under FMLA and it will use your FMLA time, and you only had 16 hours prior to February the 21st.  It looks like they added the absence starting on February 21st and your return to work is March the 28th, due to that injury. . . ."  (Pl. Dep. 245:12-18.)  When Plaintiff asked when he could take FMLA leave again, he was told he would not be able to take any additional FMLA leave until May 13, 2011.  (Pl. Dep. 246:6-15.)

When Plaintiff was absent on March 6, 2011, he received a second written warning pursuant to Defendant's attendance disciplinary policy. (Lebb Decl. ¶ 17; Ex. H.) Plaintiff had another unexcused absence on March 9, 2011, for which he allegedly should have but did not receive a disciplinary notice.

On March 15, 2011, Plaintiff applied for FMLA leave to begin on May 31, 2011, just before the expiration of the one-year period that he potentially qualified for FMLA leave for the birth of a child. (Noonan Decl., Ex. M.) That day, Plaintiff also contacted NBH/TOPS regarding his FMLA leave status. He explained that he was seeking leave to have "bonding time" with his son, born nine months earlier. Plaintiff stated, "I gave my job notice … that I was taking six weeks to bond with my child starting April 10th[.] I was already told I was qualified for it. I just wanted to see what I had to do for y'all." (Pl. Dep. 249:12-18.) An NBH/TOPS representative informed Plaintiff that he had exhausted all of his FMLA leave and that "[t]he next day [he] would be getting [FMLA] time would be May 13." (Pl. Dep. 250:25-251:8.)

On March 24, 2011, NBH/TOPS notified Plaintiff that his request for FMLA leave had been denied because he had not worked the required number of hours during the preceding twelve-month period to qualify for FMLA leave. (Noonan Decl., Ex. N.) When Plaintiff requested this leave, he had only worked 1,221.88 hours in the prior 12 month period. (Noonan Decl. ¶ 10.)

When Plaintiff was absent again on March 27, he received a one-day working suspension pursuant to the attendance disciplinary policy. (Lebb Decl. ¶ 18; Ex. I.) On March 28, Plaintiff had another unexcused absence. He received a three-day working suspension pursuant to the attendance disciplinary policy. (Lebb Decl. ¶ 19; Ex. J.) The notice he received for the March 28 absence was titled "Last and Final Warning." It notified Plaintiff that the "next infraction of this nature will subject you [to] termination of employment with US Foodservice Inc." Plaintiff and his union shop steward both signed the document. (Id.)

Plaintiff was then absent on April 10, 11 and 13, 2011. Plaintiff subsequently sought intermittent FMLA leave for his absences on April 10th, and 13th. These requests were denied because he had exceeded his twelve weeks of FMLA during the prior twelve month period. (Noonan Decl., Ex. O.) In addition, Defendant determined that Plaintiff had then accumulated seven unexcused absences, and terminated his employment on April 15, 2011. (Lebb Decl. ¶ 20; Ex. K.)

## II. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a).  The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to

withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. The Family and Medical Leave Act

A. Generally

The Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, ("FMLA") was enacted to provide leave for workers whose personal or medical circumstances require that they take time off from work in excess of what their employers are willing or able to

provide. Victorelli v. Shadyside Hosp., 128 F.3d 184, 186 (3d Cir. 1997) (citing 29 C.F.R. § 825.101). The Act is intended "to balance the demands of the workplace with the needs of families . . . by establishing a minimum labor standard for leave" that lets employees "take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse or parent who has a serious health condition." Churchill v. Star Enters., 183 F.3d 184, 192 (3d Cir. 1999) (quoting 29 U.S.C. § 2601(b)(1), (2)).

  The FMLA guarantees eligible employees 12 weeks of leave in a one-year period following certain events: a serious medical condition; a family member's serious illness; the arrival of a new son or daughter; or certain exigencies arising out of a family member's service in the armed forces. 29 U.S.C. § 2612(a)(1). During the 12 week leave period, the employer must maintain the employee's group health coverage. § 2614(c)(1). Leave must be granted, when "medically necessary," on an intermittent or part-time basis. § 2612(b)(1). Upon the employee's timely return, the employer must reinstate the employee to his or her former position or an equivalent. § 2614(a)(1). The Act makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of" these rights, § 2615(a)(1); to discriminate against those who exercise their rights under the Act, § 2615(a)(2); and to retaliate against those who file charges, give information, or testify in any inquiry related to an assertion of rights under the Act, § 2615(b). Violators are subject to payment of certain monetary damages and appropriate equitable relief, § 2617(a)(1). The Act provides for liquidated (double) damages where wages or benefits have been denied in violation of the Act, unless the defendant proves to the court that the violation was in good faith.

  "To trigger the application of the FMLA, an employee must provide his employer

with notice that leave is necessary." Johnson v. Thru Point, Inc., 160 Fed. Appx. 159, 162 (3d Cir. 2005) (citing 29 C.F.R. § 825.303 and holding that the plaintiff had not put his employer on notice of his need for health-related leave because he neither advised his employer of a medical condition nor provided the employer with an opportunity to discover it).  To evoke the requirement for unpaid FMLA leave, however, an eligible employee need not specifically assert his rights under the Act, or even mention the Act itself.  29 C.F.R. § 825.208(a)(2).  All that is required is that the employee state an FMLA qualified reason for the leave.  Id.  "[T]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.'"  Holpp v. Integrated Commc'ns Corp., Civ. No. 03-3383, 2005 WL 3479682, at *5 (D.N.J. December 20, 2005) (quoting Brohm v. JH Props., 149 F.3d 517, 523 (6th Cir. 1998)) (emphasis added).  Moreover, 29 C.F.R. § 825.302(c) requires an employer to "inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c) (2006).  "In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA qualifying, based on information provided by the employee."  Id. § 825.208(a).  The designation generally must be made before the leave starts, but only in limited circumstances can leave be designated as FMLA-protected after it has ended, usually within two business days.  Id. § 825.208(e).

     Pursuant to the FMLA and its implementing regulations, "when an employee provides notice of the need for FMLA leave, the employer shall provide the employee with notice detailing the specific expectations and obligations of the employee and

explaining any consequences of a failure to meet these obligations." 29 C.F.R. § 825.301(b)(1). This notice should contain, for example, whether the leave counts against the FMLA entitlement, whether the employee is required to provide medical certification of a serious health condition and the consequences for failure to do so, any requirement to provide a fitness for duty certificate upon restoration of employment, and the right to the same position at the end of the leave. Id. The employer should request certification, in most cases, prior to or immediately after leave commences, but may do so some time thereafter if there is reason to question the reason for the leave or its duration. Id. § 825.305.

Although employers may adopt or retain leave policies more generous than any policies that comply with the requirements under the FMLA, 29 U.S.C. § 2653, the "rights established by the Act may not be diminished by any employment benefit program or plan," 29 C.F.R. § 825.700.

    B.    <u>Interference</u>

An employer interferes with the exercise of an employee's right to unpaid leave if it fails to provide the employee who gives notice of the need for leave a written notice detailing the specific expectations and obligations of the employee and explaining any consequence of a failure to meet these obligations. See 29 U.S.C. § 2615(a)(1); <u>Parker v. Hahnemann University Hosp.</u>, 234 F. Supp. 2d 478, 483 (D.N.J. 2002). Further, conduct discouraging employees from taking FMLA leave has been held to constitute interference, even if the employee ends up taking the leave. To succeed on an interference claim, the Third Circuit requires that a plaintiff demonstrate that the failure to advise him of his FMLA rights "rendered him unable to exercise that right in a

meaningful way, thereby causing injury." Conoshenti v. Public Svc. Elec. & Gas Co., 364 F.3d 135, 143 (3d Cir. 2004) (citing 29 C.F.R. § 825.216(a)(1)).

"In order to assert a claim of interference, an employee must show that he was entitled to benefits under the FMLA and that his employer illegitimately prevented him from obtaining those benefits." Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 401 (3d Cir. 2007). Thus, to survive summary judgment on his interference claim, Plaintiff must present evidence establishing that: (1) he was entitled to FMLA benefits; (2) US Foods violated 29 U.S.C. § 2615 by "interfering with, restraining, or denying [his] exercise of FMLA rights;" and (3) he was prejudiced by the interference. Sconfienza v. Verizon Pennsylvania Inc., 307 Fed. App'x 619, 621 (3d Cir. 2008) (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002)).

  C. Retaliation

Pursuant to the FMLA, "[i]t [is] unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). It follows that the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2) (1993). But where an employee is discharged during a protected leave for a reason unrelated to the leave, there is no right to reinstatement. Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135, 141 (3d Cir. 2004) (citing 29 C.F.R. § 825.216(a)(1)).

In cases alleging retaliation in the employment setting, courts generally apply the familiar burden-shifting framework established in McDonnell Douglas Corp. v. Green,

12

411 U.S. 792 (1973).  See Weston v. Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001).  The first step under McDonnell Douglas, is to establish a prima facie case of retaliation for requesting FMLA leave.  411 U.S. at 802.  To carry this initial burden in a retaliation case, a plaintiff must show that: (1) he engaged in protected activity (taking FMLA leave); (2) he suffered an adverse employment decision; and (3) the adverse decision was causally related to the leave.  Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 146-47 (3d Cir. 2004).  A causal connection may be established by circumstantial evidence, such as temporal proximity, a pattern of antagonism, and pretext.  Kachmar v. SunGard Data Sys., 109 F.3d 173, 177 (3d Cir. 1997).  This indirect evidence is to "be considered with a careful eye to the specific facts and circumstances encountered." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279, n.5 (3d Cir. 2000).

Once a prima facie case is established, the burden of persuasion shifts back to the defendant to put forth "a legitimate, nondiscriminatory reason" for the employment decision. Id.; Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).  If the defendant succeeds in demonstrating that the decision was based on a non-discriminatory reason, Plaintiff has the burden of proving by a preponderance of the evidence that the stated reason was pretextual.  Burdine, 450 U.S. at 260; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993).

In evaluating employment cases, the task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose.  Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 525-27 (3d Cir. 1992).  Thus, to establish pretext, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since

13

the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.  Rather, the . . . plaintiff must demonstrate such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employers's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer' did not act for [the asserted] nondiscriminatory reasons." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir.1994) (internal citations omitted); Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 551 (citing Fuentes, 32 F.3d at 764-65).

"[F]iring an employee for [making] a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009).  On the other hand, an employer is not required to suspend its termination proceedings just because the employee requests medical leave.  See, e.g., Clark County Sch. Dist., 532 U.S. at 272.  "A contrary holding might impede employers from permissible terminations and encourage employees aware of an impending termination to attempt to create their own 'severance package.'" Windfelder v. The May Dep't Stores Co., 93 Fed. Appx. 351, 355 (3d Cir. 2004).

    D.    <u>Analysis</u>

Defendant argues that Plaintiff cannot satisfy his burden of proving a prima facie case of interference with his FMLA rights because (1) he did not qualify for additional FMLA leave at the time of the alleged interference; and (2) Defendant did not deny Plaintiff any leave to which he was entitled.  Defendant also argues that Plaintiff cannot

show he was terminated in retaliation for exercising his FMLA rights because he cannot show the requisite nexus between his prior FMLA leave and his termination, as he was afforded all of the leave for which he was qualified and was terminated pursuant to Defendant's attendance disciplinary policy for his excessive unexcused absences.

Plaintiff counters that a reasonable jury could conclude that Defendant interfered with his FMLA rights by attaching negative consequences, in the form of comments[4] and erroneously applied discipline, to the exercise of leave and by the failure to properly advise Plaintiff regarding his continuing use of FMLA leave during the period of December 2010 through June 2011.  (Pl. Br., p. 1-2.)  Plaintiff also contends that Defendant's asserted reason for Plaintiff's termination, excessive absences, could be discredited by a jury, which could find that Plaintiff's use of FMLA leave was a factor in the decision to terminate him.  (Id.)

Plaintiff acknowledges that to show interference, he "must demonstrate that he was entitled to FMLA [leave] and it was denied." (Pl. Br., p. 4 (citing Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005).)  Therefore, regardless of whether the FMLA rights of other employees were subjected to interference, as Plaintiff argues, and

---

[4]Among other things, Plaintiff contends:

At pre-shift meetings, . . . Robert Lebb, Director of Operations, would tell the employees they were working more because of their "FMLA buddies" and encouraged employees to call those out on FMLA, to tell them to come to work. (Pl. Dep. 101:13-22.) Mr. Lebb's other pejoratives included "FMLA brothers" and that "these *motherfuckers* on FMLA [were] the reason [employees were] working . . . overtime." (Pl. Dep. 101:25-102:16; 271:24-25.) Mr. Lebb specifically referred to [Defendant] needing to expend resources for overtime because employees were utilizing FMLA.  (Pl. Dep. 272:2-10.)

(Pl. Br., p. 5.)

15

regardless of whether comments made by management tend to indicate that the employer may have had negative views toward the FMLA program, if Plaintiff was not denied FMLA leave *to which he was entitled*, summary judgment must be granted in favor of the defense on Plaintiff's claim of interference. See Callison, 430 F.3d at 119. Plaintiff does not dispute that when his employment was terminated, he had exhausted his twelve-week allotment of FMLA leave, and was not eligible for further leave. Accordingly, Defendant did not deny Plaintiff any FMLA leave to which he was entitled. Because Plaintiff was not entitled to benefits under the FMLA, Defendant could not have illegitimately prevented him from obtaining those benefits. Summary judgment will be granted for Defendant on the claim of interference with Plaintiff's FMLA rights.

  Further, as discussed during oral argument, there is no support in the record for Plaintiff's claim that Defendant terminated his employment in retaliation for taking FMLA leave. Rather, Plaintiff exceeded the number of unexcused absences allowed by his employer, and was subject to the employer's progressive discipline policy, which ultimately resulted in Plaintiff's termination. Other than the fact that Plaintiff had exhausted the FMLA leave to which he was entitled, his prior invocation of FMLA leave had no relation to his termination. An employer is not required to suspend its termination proceedings just because the employee requests medical leave. See, e.g., Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001). "A contrary holding might impede employers from permissible terminations and encourage employees aware of an impending termination to attempt to create their own 'severance package.'" Windfelder v. The May Dep't Stores Co., 93 Fed. Appx. 351, 355 (3d Cir. 2004). Because Plaintiff cannot establish a prima facie case of retaliation, summary judgment will be granted in favor of the Defendant.

## **IV. Conclusion**

For these reasons, as well as those placed on the record during oral argument, Defendant's motion for summary judgment is granted and Plaintiff's cross-motion for summary judgment is denied.

An appropriate Order shall issue.


Dated: September 30, 2013                              /s/ Joseph H. Rodriguez
                                                                             JOSEPH H. RODRIGUEZ
                                                                                 U.S.D.J.